IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **CALVIN BURKE and CYNTHIA WALKER,** | ] |
| **Plaintiffs,** | ] |
| v. | ] **CV-11-BE-1473-E** |
| **CLAY COUNTY SHERIFF'S OFFICE, et al.,** | ] |
| **Defendants.** | ] |

**MEMORANDUM OPINION**

This matter comes before the court on defendants' Motion to Dismiss (doc. 7) and supporting brief (doc. 8). The defendants raise qualified immunity and state immunity defenses and argue that the plaintiffs have not alleged any violations of their constitutional rights. The defendants also argue that the plaintiffs' state law claims are without merit. The plaintiffs filed a brief opposing the motion (doc. 11). The defendants did not file a reply brief within the allowed briefing schedule, and the case is ripe for consideration. For the reasons stated below, this court GRANTS the defendants' motion to dismiss.

**I. STATEMENT OF FACTS AND PROCEDURAL HISTORY**

At the motion to dismiss stage, the allegations of the complaint must be taken as true. *Lotierno v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). The court accepts as true the following facts from the complaint.

Plaintiffs Calvin Burke and Cynthia Walker both worked as jailers for the Clay County Sheriff's office. The defendants terminated the plaintiffs' employment on May 12, 2009. The

complaint does not allege precisely which defendants were responsible for the plaintiffs' termination, or the role the individual defendants had in the termination. The complaint does allege that the defendants were all related to each other, insinuating that the defendants' family ties were a factor in the termination.

According to the complaint, both plaintiffs requested a hearing and grounds for their dismissal. They did not receive a hearing; the defendants only informed the plaintiffs that they were being terminated for spreading unspecified rumors. Both plaintiffs deny ever having spread the rumors, and allege that the defendants never provided evidence of the rumors. The complaint enumerates several other deficiencies in the termination process. They include, among others, the absence of any hearings, pre- or post-termination; the defendants' refusal to produce any written complaints or other evidence supporting the termination; and the lack of any warnings or notices before termination. The plaintiffs explain that the Clay County Sheriff's Office's written Rules and Regulations required that the defendants follow some procedure in terminating the plaintiffs' employment, but that the defendants did not comply with these Rules and Regulations.

The plaintiffs both filed EEOC complaints. They received Right to Sue letters from the EEOC regarding the wrongful termination, but neither plaintiff employed an attorney in time to file an EEOC court action. Both plaintiffs allege that they received negative treatment for filing the EEOC complaint, although the complaint filed in this court does not state how they were "treated unlawfully" as a result of their making the EEOC complaint. *See* Pl. Comp. ¶ 8 (May 3, 2011).

The plaintiffs initiated suit in this court on May 3, 2011. They alleged due process violations (Count I), First Amendment violations (Count II), libel, slander and defamation (Count

III), and "other state court torts" (Count IV).

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained in *Twombly* that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1948 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent

with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has recently identified in *Iqbal* "two working principles" for the district court to use in applying *Twombly's* facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. C. at 1949-50. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1150. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to the task of determining the claim's plausibility given the well-pleaded facts. That task is "context-specific" and must permit the court, based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

In this case, the defendants have also submitted evidence outside the pleadings. "When matters outside the pleadings are presented to and not excluded by the district court in a [motion to dismiss], the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Nalls v. Coleman Low Federal Inst.*, 307 Fed. App'x 296, 297 (11th Cir. 2009) (citing Fed. R. Civ. P. 12).

This court will exclude the evidence submitted beyond the pleadings when considering

4

this motion to dismiss. The defendants did not explicitly seek to convert their motion to dismiss into a motion for summary judgment, and the plaintiffs were not given a reasonable opportunity to present all material relevant to the motion. Moreover, this motion can be decided solely based on the pleadings, without the need for outside evidence.

### III. DISCUSSION

*Procedural due process claims*

Count I of the plaintiffs' complaint asserts, through § 1983, that the defendants violated their federal right to procedural due process because of the manner in which the defendants terminated the plaintiffs. Specifically, the plaintiffs allege that the defendants terminated them without providing any notice, hearing, or other pre-termination procedural safeguards, as the defendants were required to do under the Clay County Sheriff's Office Rules and Regulations. The plaintiffs did not include a copy of the Rules and Regulations as an exhibit to their complaint or set out specific provisions. Even had they done so, however, the plaintiffs do not have a claim for violation of procedural due process in their termination.

In the Eleventh Circuit, "a § 1983 claim alleging the denial of procedural due process requires proof of three elements: (1) a deprivation of constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Cook v. Randolph County, Ga.*, 573 F.3d 1143, 1148-49 (11th Cir. 2009) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Not every denial of procedural due process gives rise to a federal cause of action, however, because "a procedural deprivation may be cured by providing a later procedural remedy." *Sullivan Props. v. City of Winter Springs*, 899 F. Supp. 587, 594 (M.D. Fla. 1995) (quoting *McKinney*, 20 F.3d 1550,1557 (11th Cir. 1994)). According to the Eleventh Circuit,

> only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise. It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim.

*Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (footnote and quotation omitted). "This rule ... recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora – agencies, review boards, and state courts – before being subjected to a claim alleging a procedural due process violation." *Id.* (quotation omitted).

Thus, the Eleventh Circuit has acknowledged time and time again that the procedural due process "a state provides is not only that employed by the board, agency, other governmental entity whose action is in question, but also includes the remedial process state courts would provide if asked." *Horton v. Bd. of County Comm'rs*, 202 F. 3d 1297, 1300 (11th Cir. 2000); *see also Bass v. Perrin,* 170 F.3d 1312, 1319 (11th Cir. 1999); *Harris v. Bd. of Educ.*, 105 F.3d 591, 596 (11th Cir. 1997); *McKinney,* 20 F.3d at 1561-65. If the state provided adequate remedies and "the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Cotton*, 216 F.3d at 1331.

The Eleventh Circuit has further emphasized that the Alabama state courts' review of pretextual terminations is sufficient to satisfy procedural due process. *See Bell v. City of Demopolis*, 86 F.3d 191, 192 (11th Cir. 1996) (explaining that "Alabama courts . . . review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process" and finding that

no due process violation existed because the adequate state remedy of state court review was available); *c.f. McKinney*, 20 F.3d at 1565 ("Since the Florida courts possess the power to remedy any deficiency in the process by which [the plaintiff] was terminated, [the plaintiff] can not claim that he was deprived of procedural due process.").

In their complaint, the plaintiffs' alleged due process violations focus solely on the defendants' procedural deficiencies in terminating the plaintiffs. The complaint, however, does not allege that the State of Alabama failed to provide adequate remedies to review the defendants' alleged procedural deficiencies.

The plaintiffs could have sought review of their termination in Alabama state courts. Because the Eleventh Circuit has explained that "state-court review of employment termination decisions qualifies as an adequate post-deprivation remedy," *Autery v. Davis*, 355 Fed. Appx. 253, 255 (11th Cir. 2009), and because the plaintiffs cannot allege any facts demonstrating that state court review would be deficient, this court finds that, as a matter of law, they cannot adequately state a claim for violation of procedural due process. Accordingly, the court will hereby DISMISS WITH PREJUDICE Count I of the complaint.

*First Amendment Violations*

In Count II of their complaint, the plaintiffs allege that the defendants violated their First Amendment rights, which the plaintiffs divide into two sub-counts: First Amendment retaliation, and supervisory liability.

Under the First Amendment, "[a] public employer may not retaliate against an employee for an employee's exercise of constitutionally protected speech." *Cook v. Gwinnett County School District*, 414 F.3d 1313, 1318 (11th Cir. 2005). A public employee's right to free speech,

however, is not absolute but must be balanced against the "[s]tate's interest as an employer in regulating the speech of its employees [which] differ[s] significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Connick v. Myers*, 461 U.S. 138, 140 (1983) (internal quotation omitted). "Acting as an employer, the government is afforded broad discretion in its employment decisions." *Boyce v. Andrew*, 510 F.3d 1333, 1341-2 (11th Cir. 2007). Therefore, "to strike the appropriate balance between the respective interests, [courts have applied] the four-step analysis set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) and *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir. 1989)." *Cook*, 414 F.3d at 1318. Under that analysis,

> an employee must show that (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action. . . . If an employee satisfies her burden on the first three steps, the burden then shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech. . . . The first two steps are questions of law; the final two steps are questions of fact designed to determine whether the alleged adverse employment action was in retaliation for the protected speech.

*Id.* (internal citations and quotations omitted).

In the 2006 case of *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006), the Supreme Court "clarified and simplified" this analysis in a significant way. *See Boyce v. Andrew*, 510 F.3d 1333, 1342 (11th Cir. 2007) (using the quoted language in its explanation of *Garcetti*'s effect on First Amendment inquiries regarding the speech of public employees). In *Garcetti*, the Supreme Court addressed whether First Amendment protection attached to two disposition memoranda that a deputy district attorney wrote recommending dismissal of charges

in a case based upon a search warrant that he felt contained misrepresentations. A meeting to discuss his recommendations with supervisors and employees of the sheriff's department became heated, and despite his concerns about the search warrant, the prosecution of the case proceeded. At trial, the defense called the deputy district attorney to testify about the alleged misrepresentations in the search warrant, and although the trial judge ultimately rejected the challenge to the search warrant, the deputy district attorney was subsequently transferred to a less favorable deputy position at another courthouse. He sued under Section 1983, alleging that his job change represented retaliation for protected speech. In determining whether his speech was protected, the Court considered the "controlling factor" to be whether his speech was performed pursuant to his job duties, identifying as relevant the factors of whether the speech occurred in the workplace and whether the speech concerned the subject matter of the employee's job. 547 U.S. at 420-21. The Court determined that his memoranda were not protected speech because "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 421. The Court proceeded to explain, "When a public employee speaks pursuant to employment responsibilities, ... there is no relevant analogue to speech by citizens who are not government employees." *Id.* at 424.

Following *Garcetti*, the Eleventh Circuit "has modified the analysis of the first step of the *Pickering* test for analyzing alleged government employer retaliation to determine if an employee's speech has constitutional protection by deciding at the outset (1) if the government employee spoke as an employee or citizen and (2) if the speech addressed an issue relating to the mission of the government employer or a matter of public concern." *Boyce*, 510 F.3d at 1342

(citing *D'Angelo v. School Bd. of Polk County, Fla.*, 497 F.3d 1203, 1209 (11th Cir. 2007)). To receive First Amendment protection, government employees must speak *both* on a matter of public concern *and* as a citizen as opposed to an employee.

The plaintiffs have not identified any speech that meets these requirements under Count II of the complaint. In the statement of facts, this court only found two paragraphs that *potentially* refer to speech made by the plaintiffs:

> 8. The Plaintiffs both filed EEOC Complaints and received right to sue Letters from the EEOC relative to their contested wrongful termination, but neither employed this attorney in time to file an EEOC employment law action. However, both believe they have been treated unlawfully for filing an EEOC Complaint against the governmental entity.
> . . .
> 10. The Plaintiffs were informed they were being terminated for spreading rumors, which both Plaintiff's *[sic]* deny ever occurred, and no evidence of such was ever provided to the Plaintiffs to cross examine and investigate further. Both Plaintiffs were denied pre- and post-termination hearings by the Defendants, denied numerous requests to see the charges against them, denied access to and the opportunity to review all materials in their personnel files and denied the right to confront their accusers and be able to face and cross-examine their accusers.

Pl. Compl. at 4 (May 3, 2011).  The plaintiffs, in opposition to the defendants' motion to dismiss, only point to the rumors they deny having made as the basis for their First Amendment retaliation claim. *See* Pl. Opp. Br. ¶ 4 (Aug. 9, 2011) (asserting that plaintiffs had their "First Amendment Right of Free Speech, curtailed by being terminated for, according to 'rumor', *[sic]* allegedly 'spreading rumors' regarding one of their supervisors, which both Plaintiffs totally deny and no known evidence exists to support the Defendants' reported reasons for their actions . . .").

These factual allegations are not sufficient to allow this court draw the reasonable inference that the defendants are liable for the alleged First Amendment retaliation. The plaintiffs must show that their speech was protected—specifically, that they spoke on a matter of public

concern, and that they spoke as citizens and not as employees. The factual allegations state only that the plaintiffs were terminated for spreading rumors that they deny having spread. Assuming that the plaintiffs could support a First Amendment retaliation claim on the basis of speech they denied having made—a contention for which the plaintiffs do not provide any authority— the complaint does not give any details as to the content of the rumors, and the plaintiffs' opposing brief only states that the rumors were about one of the plaintiffs' supervisors. These allegations do not contain sufficient factual matter for this court to infer that they concerned a public matter, or that they were alleged to have been made by the plaintiffs as citizens rather than as employees.

Similarly, the alleged EEOC complaints, which the plaintiffs did not discuss in their opposition brief, are too vague to allow this court to infer that the EEOC complaints could constitute protected speech. As with the alleged rumors, the scarcity of facts regarding the EEOC complaints do not allow the court to reasonably infer that the contents of these complaints were matters of public concern and made by the plaintiffs as citizens.

Put differently, the plaintiffs have not met the *Iqbal* requirement that the complaint contain enough facts to "allow this court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1249. Because these pleadings are insufficient to state a claim of First Amendment retaliation, this court finds that the First Amendment retaliation claim is due to be dismissed for failure to state a claim under Rule 12(b)(6).

The plaintiffs also asserted, as a subpart to their First Amendment violations, supervisory liability, although they neglect to identify the supervisor in count II of their complaint. In the Eleventh Circuit, supervisory liability first requires that a supervisor's subordinates cause a

constitutional violation. *See AFL-CIO v. City of Miami*, 637 F.3d 1178, 1190 (11th Cir. 2011). Because the plaintiffs have not sufficiently pled facts to support a First Amendment retaliation claim, their assertion of supervisory liability also lacks merit.

Accordingly, the court will hereby DISMISS WITHOUT PREJUDICE Count II of the plaintiffs' complaint.

*Plaintiffs' state law claims*

In addition to the procedural due process and First Amendment retaliation claims, both brought under § 1983, the plaintiffs allege many other state law claims. Because this court dismisses Count I (due process violations) and Count II (First Amendment violations), only the plaintiffs' state law claims remain. In this case, the plaintiffs did not plead diversity jurisdiction, and the facts of the complaint do not belie its existence. Thus, the only basis for this court's jurisdiction on the state law claims was supplemental jurisdiction under 28 U.S.C. § 1367. When the federal claims are dismissed, as is the case here, this court may decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

Under this provision, this court declines to exercise supplemental jurisdiction. The defendants, in their brief on the motion to dismiss, raised state immunity as a defense and alternatively argued that the plaintiffs' state law claims lacked merit. The plaintiffs, in their four-page brief opposing the defendants' substantial motion to dismiss, do not respond at all to defendants' arguments regarding the state law claims. Instead, the plaintiffs only state in their second to last paragraph that "[m]any of the Plaintiffs [*sic*] causes of action are not recognized or

barred against the Defendants under the laws of the State of Alabama; therefore, under the theory of *Rule 1* 'judicial economy' and to prevent 'manifest injustice'---- the U.S. Federal Court system is the only forum where all the Plaintiffs [*sic*] claims may be fairly heard." Pl. Opp. Br. ¶ 7 (Aug. 9, 2011).

This court disagrees with the plaintiffs' contention that "judicial economy" suggests that their claims be heard in this forum. Instead, this court concludes that allowing these claims to continue in this forum will waste this court's and the defendants' time and resources. Under a cursory review of Alabama state law, this court finds that the viability of plaintiffs' claims are dubious, at best. *See Mack v. Arnold*, 929 So. 2d 480, 485 (Ala. Civ. App. 2005) ("We conclude that because [plaintiff] was a state employee, [the sheriff] was not required to follow any county procedures before terminating [plaintiff]'s employment and that because the personnel manual did not constitute a contract of employment, the trial court properly entered a summary judgment in favor of the sheriff."). Given the plaintiffs' lackluster effort to defend their claims here, and for other reasons, this court declines to maintain supplemental jurisdiction over this case. The court will therefore dismiss the state law claims without prejudice.

## IV. CONCLUSION

For the reasons stated above, this court finds that defendants' motion to dismiss is hereby GRANTED. The court will simultaneously enter an order to this effect.

DONE and ORDERED this 4th day of November, 2011.

*/s/ Karon O. Bowdre*
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE